Ronald GILLIAM, Plaintiff,

v.

Gary L. HOBERT, et al., Defendants.

Civil Action No. 96–0137–H.

United States District Court,
W.D. Virginia,
Harrisonburg Division.

Jan. 15, 1997.

Glenn Milburn Hodge, William E. Shmidheiser, III, and Donald Eugene Showalter, Wharton, Aldhizer & Weaver, P.L.C., Harrisonburg, VA, for plaintiff.

Christopher B. Mead and Mark London, London & Mead, Washington, DC, for defendants.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

In this dispute, plaintiff Gilliam, a minority shareholder and member of the board of directors of defendant First Federal Savings Bank of Shenandoah Valley ("First Federal"), challenges the June 1996 election of First Federal's board of directors. This is not the first time that plaintiff has sued First Federal for actions relating to the election of the board of directors; the bank previously settled a case filed in which plaintiff alleged that the bank prevented him from being elected to the board of directors. *See Gilliam v. Hobert*, Civ.A. No. 95–0040–H (W.D.Va. May 23, 1995). Nevertheless, as much as plaintiff attempts to bring in the facts surrounding the prior disputes, this court is only concerned with the events underlying the June 1996 board election.

First Federal's board is made up of nine directors, three of whom are elected each year. The three nominees for director who receive the most votes are elected to three year terms. Defendant's by-laws permit cumulative voting, thus each share of stock has three votes that may be apportioned among the nominees at the shareholder's discretion. When three directors were due to be elected in June 1996, the board sent out a series of proxy solicitations in which it recommended, by majority vote, that shareholders elect Alexander C. Biondi, E.J. Kerfoot, Jr., and E.J. Kerfoot, Sr. Other nominees included Donald Fuller and plaintiff's choice, Gary Olsen, but these candidates were not favored by the board. Because plaintiff controls 17.53% of the outstanding shares of common stock, plaintiff normally can elect one director of his choice by voting all of his shares in favor of one nominee.[1]

The proxy statement provided by First Federal appointed defendant Kimberlie P. Belcher to act as proxy. At the time, Belcher was vice-president of the bank and a member of the board of directors. Under the terms of the proxy, Belcher would cast one vote for each of the board's nominees unless a shareholder explicitly disapproved of any of the board's nominees. The proxy provided further, however, that

[n]otwithstanding the foregoing, the persons named as proxy in the enclosed form of proxy reserve the right to cumulate votes in respect of the election of directors, and to allocate such votes among such number of nominees as they shall in their discretion deem appropriate in order to elect the largest number of [the board's] nominees possible.

June 28, 1996 Proxy Statement of First Federal Savings Bank of Shenandoah Valley at 1 ("Proxy Statement"). When it came time to vote for the new nominees to the board of directors, it became apparent that if Belcher

---

1. This was, in fact, how plaintiff himself received sufficient votes to have been elected to the board during the 1994 board elections.

cast all the proxy votes for the board's nominees evenly, only one board-recommended nominee would be elected. Donald Fuller had received 296,877 votes, the most votes cast for an individual. Gary Olson had received 224,928 votes, potentially the second highest number of votes cast by the shareholders. If Belcher had cast her proxy votes evenly, each of the board's nominees would have received approximately 190,000 votes, thus electing only one of the board's nominees to the board of directors. Belcher, however, chose to split the votes between Biondi and Kerfoot, Jr., casting 284,562 and 280,592 votes for each of the nominees, respectively. She cast no votes for Kerfoot, Sr. Because Belcher cumulated the votes, Biondi and Kerfoot, Jr. received more votes than Olson, thus denying Olson election to the board. Plaintiff now challenges this election, arguing that (1) the proxy did not give Belcher the authority to cast the votes cumulatively; (2) if the proxy gave such authority, it was materially misleading; and (3) if the proxy was not materially misleading, Belcher nonetheless failed the exercise her discretion in an appropriate manner.[2]

This motion comes on for summary judgment pursuant to a consent motion in which the parties requested that the court alter its traditional procedure so as to expedite review of defendant's motion. Plaintiff now argues that he "did not agree and do[es] not believe that this case is ripe for summary adjudication" and that this case should "be fully developed and heard after an opportunity to conduct adequate discovery." This court can see little that would be gained by additional discovery; accordingly, summary judgment will issue if appropriate.

Defendants are entitled to summary judgment only if there are no genuine disputed issues of material fact and defendants are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir.1990) (en banc), *cert. denied*, 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). Both sides in the instant dispute have submitted documentary evidence or sworn declarations to support or oppose defendants' motion. Defendants have the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Once defendants meet this burden, plaintiff must come forward with affidavits, depositions, or other admissible evidence, to show that material facts remain in dispute. *Catawba Indian Tribe v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir.1992), *cert. denied*, 507 U.S. 972, 113 S.Ct. 1415, 122 L.Ed.2d 785 (1993). The facts, and the inferences therefrom, must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Nguyen v. CNA Corp.*, 44 F.3d 234, 237 (4th Cir.1995). Nevertheless, a "mere . . . scintilla of evidence" will not defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). If plaintiff has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment must issue. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

### I. *Laches*

Defendant initially argues that plaintiff's claim is barred by the doctrine of laches. In order to assert a defense of laches, a defendant must show "(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense." *White v. Daniel*, 909 F.2d 99, 102 (4th Cir.1990) (quoting *Costello v. United States*, 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5

---

**2.** Although plaintiff's complaint is devoid of any reference to the laws or regulations—state or federal—under which plaintiff seeks relief, the parties agree that federal law and Office of Thrift Supervision ("OTS") regulations control in this case. *See* letter from Christopher B. Mead to the Court (Jan. 8, 1997) (enclosing on behalf of both parties a memorandum addressing jurisdictional issues and federal preemption filed in the 1995 state court proceedings); *see also Fidelity Fed. Sav. & Loan v. de la Cuesta*, 458 U.S. 141, 161, 102 S.Ct. 3014, 3026–27, 73 L.Ed.2d 664 (1982); *Rettig v. Arlington Heights Fed. Sav. & Loan Assoc.*, 405 F.Supp. 819, 823 (N.D.Ill.1975). Because First Federal is a federally chartered corporation under the supervision of the OTS, this court will presume that plaintiff is seeking relief under federal law.

L.Ed.2d 551 (1961)), *cert. denied*, 501 U.S. 1260, 111 S.Ct. 2916, 115 L.Ed.2d 1079 (1991). In the instant case, defendants argue that plaintiff was insufficiently diligent in objecting to the June 1996 election because he failed to file suit until December 1996. This delay, defendants contend, unfairly prejudices the bank because the challenge is hampering current efforts to sell the bank or its stock, while past actions of the board are necessarily being called into question. Plaintiff responds that defendants cannot raise laches because counsel for First Federal dissuaded plaintiff from filing suit by informing plaintiff that there were negotiations underway for defendant Hobert, president of the bank and member of the board of directors, to resign.[3] Defendants answer that it was clear by July 1996 that the board would not permit Hobert to resign; accordingly, laches is still a valid defense.

The starting point appears to be Rule 14a–9, found at 17 C.F.R. § 240.14a–9 and promulgated by the Securities and Exchange Commission ("SEC") pursuant to the Securities Act of 1934, 15 U.S.C. § 78n(a). Rule 14a–9 prohibits materially misleading statements in the solicitation of proxies. The Securities Act of 1934, however, applies only to those corporations that have registered their securities with the SEC pursuant to 15 U.S.C. § 78*l*. Because First Federal is neither traded on a national stock exchange nor does it have sufficient shareholders of record or assets so as to trigger mandatory registration of its securities, the bank is not subject to the Securities Act. *See id.* § 78*l* (g)(1). Nevertheless, First Federal is subject to supervision by the OTS, which has promulgated regulations to conform with the 1934 Act and its underlying regulations. *See id.* § 78*l*(i) (directing the OTS to "issue substantially similar regulations" to regulations and rules issued by the SEC under the 1934 Act). 12 C.F.R. § 569.4(c)(1) bars an OTS-supervised institution from issuing any proxy solicitation that "[c]ontain[s] any statement that is false or misleading with respect to any material fact." As the Supreme Court remarked with regard to a similar rule issued by the FDIC,

this rule "is essentially identical to Rule 14a–9," *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1087 n. 2, 111 S.Ct. 2749, 2755 n. 2, 115 L.Ed.2d 929 (1991) (discussing 12 C.F.R. § 335.206). Accordingly, case law discussing Rule 14a–9 would appear applicable to the instant case.

■ With regard to actions under § 10(b) of the 1934 Act, the Supreme Court held that claims must be brought within one year after the discovery of the facts constituting a violation of § 10(b), or within three years of the violation. *See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 111 S.Ct. 2773, 115 L.Ed.2d 321 (1991). Because of the similarities between § 10(b) and § 14(a), courts have held that a similar limitations period applies to claims under § 14(a). *See, e.g., Westinghouse Elec. Corp. v. B.H. Franklin*, 993 F.2d 349, 353 (3rd Cir.1993). Given that claims under 12 C.F.R. § 569.4(c)(1) are substantially similar to those brought under § 14(a), an identical period of limitations should apply. Accordingly, the issue in the instant case becomes whether the doctrine of laches should be permitted to defeat a claim brought within the applicable statute of limitations period of one year.

■ At most, plaintiff waited five months to bring his claim. In *Westinghouse*, the Third Circuit held that the one year statute of limitations applicable to claims made under § 14(a) precluded plaintiff's use of the doctrine of laches so as to permit plaintiff to bring claims for equitable relief that would otherwise have been outside the period of limitations. *Id.* at 356–57. Just as the Third Circuit refused to permit a plaintiff to use the doctrine of laches to extend the period of limitations, using laches to constrict the period of limitations so as to bar plaintiff from bringing this action is unwarranted. One year is a short enough period of limitations so that laches should not apply to defeat a claim. Accordingly, this court will hold that plaintiff's claim is not barred by laches and

---

**3.** Plaintiff appears to hold Hobert primarily responsible for many of the alleged improprieties undertaken by First Federal.

instead address the merits of plaintiff's complaint.

## II. *First Federal's Proxy Statement*

### A. *Standing*

■ Defendant first argues that plaintiff does not have standing to assert his claim because plaintiff does not allege that he relied on the proxy statement to his detriment. A plaintiff need not rely on a proxy solicitation to bring suit under 14a–9 (and thus, by inference, in the instant case) because the plaintiff is bringing his claim on behalf of the corporation rather than an individual. *See Cowin v. Bresler*, 741 F.2d 410, 427 (D.C.Cir. 1984). As the court in *Cowin* explained:

> The injury Cowin alleges was not caused by his individual reliance on deceptive proxy solicitations. Rather, his claim is that other shareholders elected appellees as directors because they were misled by the proxy materials. The installation of appellees as directors and their subsequent actions has injured appellant. This injury is totally divorced from any reliance, or lack of reliance, on Cowin's part and falls precisely into the scope of injury Congress sought to protect. Requiring reliance in these circumstances would serve no legitimate policy and we decline to do so.

*Id.* at 427 (citing *J.I. Case Co. v. Borak*, 377 U.S. 426, 432, 84 S.Ct. 1555, 1559–60, 12 L.Ed.2d 423 (1964)); *see also Hershfang v. Knotter*, 562 F.Supp. 393, 397–98 (E.D.Va. 1983), *aff'd*, 725 F.2d 675 (4th Cir.1984) (holding that plaintiff had standing under § 14(a) despite his lack of reliance because injury suffered had no connection to his individual reliance). Accordingly, plaintiff has standing to assert his claim.

### B. *Cumulative Voting*

■ First Federal follows the Model Bylaws for Stock Associations contained in the appendix to 12 C.F.R. Pt. 552. The Model Bylaws provide for cumulative voting. *Id.* Pt. 552 appx. at art. II, § 12 (noting that "[e]very stockholder entitled to vote at an election for directors shall have the right to vote, in person or by proxy, the number of shares owned by the stockholder for as many persons as there are directors to be elected

and for whose election the stockholder has a right to vote, *or to cumulate the votes by giving one candidate as many votes as the number of such directors to be elected*") (emphasis added). First Federal's initial and revised proxy statements and forms gave notice of the possibility of cumulative voting in two places. First, the proxy statement informed shareholders that

> the persons named as proxy in the enclosed form of proxy *reserve the right to cumulate votes in respect of the election of directors*, and to allocate such votes among such number of nominees as they shall in their discretion deem appropriate in order to elect the largest number of [the board's] nominees possible.

Proxy Statement at 1 (emphasis added). Moreover, the proxy form "appoint[ed] Kimberlie P. Belcher, with full powers of substitution, to act as attorney and proxy for the undersigned, to vote (*including cumulatively in the election of directors*) all shares of Common Stock." June 28, 1996 Revocable Proxy (emphasis added). Plaintiff argues that the proxy materials only tell the stockholder that the proxyholder will cast her votes in an even manner for each of the board's nominees, dismissing the above-quoted materials as "relatively obscure" and contending that nowhere does the proxy suggest that Belcher would not vote for Kerfoot, Sr. Leaving aside the issue of whether the proxy materials were materially misleading, the proxy clearly authorized cumulative voting, and, if necessary, voting in such a manner that one of the board's nominees might not receive sufficient votes to win or any votes at all. Accordingly, Belcher was authorized to cast the votes in a cumulative manner.

### C. *Materially Misleading*

Plaintiff argues that even if the proxy materials authorized cumulative voting, the proxy was materially misleading because the possibility of cumulative voting was not clearly stated.

A proxy is materially misleading if it contains a misstatement or omission that "was of such character that it might have been considered important by a reasonable shareholder who was in the process of deciding how to

vote." *Mills v. Electric Auto–Lite Co.*, 396 U.S. 375, 384, 90 S.Ct. 616, 621–22, 24 L.Ed.2d 593 (1970); *see also TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976) (holding that "there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available").

■ Plaintiff argues that the proxy materials were misleading because they gave the shareholders the impression that their votes would be cast evenly for all three of the board's nominees. Plaintiff quotes extensively from 12 C.F.R. § 335.207 to argue that the discretionary authority granted to Belcher was improperly solicited. Section 335.207 is inapplicable to the instant case because it was promulgated by the FDIC for application to banks that under its supervision. First Federal is under the supervision of the OTS, which has issued separate regulations governing the form of proxies. *See* 12 C.F.R. § 569.2. Although the FDIC's regulations specifically address the exercise of discretionary authority, OTS's regulations are silent. Accordingly, First Federal may use a proxy to solicit discretionary authority as long as the proxy complies with OTS regulations.

Section 569.4 provides that a proxy cannot

(1) Contain any statement that is false or misleading with respect to any material fact, or

(2) Omit to state any material fact:

(i) Necessary in order to make the statements therein not false or misleading or

(ii) Necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter that has subsequently become false or misleading.

After reviewing the proxy materials filed in this case, this court finds that the proxy was not materially misleading. As the language of the proxy materials makes clear, *see supra* part II.B., cumulative voting was a possibility that each shareholder accepted if he or she decided to vote by proxy. Unlike the FDIC regulations, there is no requirement that language seeking discretionary authority be in boldface type. Compare § 335.207(b)(1) *with* § 569.4. The failure to emphasize the provisions governing cumulative voting and the exercise of discretion does not render the proxy forms materially misleading; thus, plaintiff's complaint on this basis must fail.[4]

## III. *Belcher's Exercise of Discretion*

■ The final issue is whether Belcher appropriately exercised her discretion. Plaintiff appears to argue that Belcher did not have discretion to determine whether to cumulate the votes or which directors to vote for if she chose to cumulate the votes. Plaintiff argues that a board meeting was necessary to make that determination and no such board meeting occurred.

4. Moreover, although unnecessary to the court's decision, this court notes that defendant has submitted declarations from a number of stockholders who aver that they were not materially misled by the proxy form and that they understood cumulative voting was a possibility. The total number of shares that these stockholder control was more than sufficient to permit two of the board's nominees to defeat Olson. Even assuming that all of the other shareholders were misled and that they would have voted differently had they understood that cumulative voting was possible, the board still would have had enough votes to elect Biondi and Kerfoot, Jr. In *Virginia Bankshares*, the Supreme Court noted in the context of a challenge to a merger that "[a]ssuming that material facts ... were not accurately disclosed [in a proxy], the minority votes were inadequate to ratify the merger under state law, and

there was no loss of state remedy to connect the proxy solicitation with harm to minority shareholders irredressable under state law." *Virginia Bankshares*, 501 U.S. at 1083–84, 111 S.Ct. at 2752–54. The import of *Virginia Bankshares* is, in part, that if the minority could not have prevented the corporate action, they may not seek redress through claims brought under federal proxy regulations unless recourse is unavailable under state law. In the instant case, the votes of the potentially misled stockholders were unnecessary to install Biondi and Kerfoot, Jr. Because Virginia permits shareholders to seek judicial relief if they are aggrieved by a board of directors election, *see* Virginia Code § 13.1–681, plaintiff's claim could be dismissed under *Virginia Bankshares* even if the proxy were materially misleading.

By majority vote, the board selected their candidates for the board of directors. In addition, they drafted the proxy materials giving Belcher, a member of the board, the discretion to determine whether cumulative voting was necessary. The only direction was "to allocate such votes among such number of nominees as [the proxyholders] shall in their discretion deem appropriate in order to elect the largest number of nominees possible." Proxy Statement at 1. Having been granted the discretion to vote the shares in the manner most certain to assure the election of the greatest number of bank-nominated directors, this court cannot now conclude that Belcher's decision to vote for Biondi and Kerfoot, Jr. over Kerfoot, Sr. was an abuse of discretion.