14-0894-cv
*DeKalb Cty. Pension Fund v. Transocean Ltd.*

# In the
# United States Court of Appeals
## for the Second Circuit

AUGUST TERM 2015
No. 14-0894-cv

DEKALB COUNTY PENSION FUND,
on behalf of itself and all others similarly situated,
*Plaintiff-Appellant*,

v.

TRANSOCEAN LTD., ROBERT L. LONG,
JON A MARSHALL, and TRANSOCEAN INC.,
*Defendants-Appellees*.[*]

On Appeal from the United States District Court
for the Southern District of New York

ARGUED: AUGUST 18, 2015
DECIDED: MARCH 17, 2016
AMENDED: APRIL 29, 2016

---

[*] The Clerk of Court is directed to amend the caption of this appeal as indicated above.

Before: CABRANES, RAGGI, and WESLEY, *Circuit Judges*.

———

On appeal from the March 14, 2014 judgment of the United States District Court for the Southern District of New York (Lorna G. Schofield, *Judge*) dismissing as time-barred by the applicable three-year statutes of repose the complaint of plaintiff-appellant DeKalb County Pension Fund ("DeKalb") against defendants-appellees Transocean Ltd., Robert L. Long, Jon A. Marshall, and Transocean Inc. for alleged violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78n(a), 78t(a), and Securities and Exchange Commission Rule 14a-9, 17 C.F.R. § 240.14a-9.

We hold that: **(1)** Sections 9(f) and 18(a) of the 1934 Act, 15 U.S.C. §§ 78i(f), 78r(a), provide "private right[s] of action that involve[ ] a claim of fraud, deceit, manipulation, or contrivance," to which a five-year statute of repose now applies after the passage of the Sarbanes-Oxley Act of 2002 ("SOX"), Pub. L. No. 107-204, 116 Stat. 745, but that Section 14(a) does not provide such a private right of action; **(2)** the same three-year statutes of repose that applied to Sections 9(f) and 18(a) before the passage of SOX, which we borrowed and applied to Section 14 in *Ceres Partners v. GEL Associates*, 918 F.2d 349 (2d Cir. 1990), still apply to Section 14(a) today; **(3)** the statutes of repose applicable to Section 14(a) begin to run on the date of the defendant's last culpable act or omission; **(4)** DeKalb's lead-plaintiff motion does not "relate back" under Rule 17(a)(3) of the Federal Rules of Civil Procedure to the filing of the original class-action complaint; **(5)** the Private Securities Litigation

2

Reform Act of 1995, Pub. L. No. 104-67, 109 Stat. 737, does not toll the statutes of repose applicable to Section 14(a); and **(6)** the tolling rule that the Supreme Court described in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), does not extend to the statutes of repose applicable to Section 14(a).

Accordingly, we **AFFIRM** the District Court's March 14, 2014 judgment dismissing DeKalb's Section 14(a) claim as time-barred by the applicable three-year statutes of repose and its Section 20(a) claim for failure to state a claim upon which relief can be granted.

————

GEOFFREY M. JOHNSON (Thomas L. Laughlin & David R. Scott, *on the brief*), Scott+Scott LLP, New York, NY, for *Plaintiff-Appellant.*

JOHN W. SPIEGEL, Munger, Tolles & Olson LLP, Los Angeles, CA, for *Defendants-Appellees Transocean Ltd., Transocean Inc., and Robert T. Long.*

Peter Ligh, Sutherland Asbill & Brennan LLP, New York, NY, for *Defendants-Appellees Transocean Ltd., Transocean Inc., and Robert T. Long.*

Todd S. Fishman, Allen & Overy LLP, New York, NY, for *Defendant-Appellee Jon A. Marshall.*

JOSÉ A. CABRANES, *Circuit Judge*:

A statute of limitations "creates a time limit for suing in a civil case, based on the date when the claim accrued."[1] By contrast, a statute of repose "puts an outer limit on the right to bring a civil action[,] . . . measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant"—"in essence an absolute bar on a defendant's temporal liability."[2]

This appeal concerns the latter, "relatively rare" species of limitations period.[3] Specifically, the principal questions presented are the following: what statute of repose applies to Section 14(a) of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. § 78n(a), and when does that statute of repose begin to run?

In conjunction with Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, Section 14(a) prohibits "solicitation . . . made by means of any proxy statement . . .

---

[1] *CTS Corp. v. Waldburger*, 134 S. Ct. 2175, 2182 (2014) (internal quotation marks omitted).

[2] *Id.* at 2182–83 (alterations and internal quotation marks omitted).

[3] *See* Christopher R. Leslie, *Den of Inequity: The Case for Equitable Doctrines in Rule 10b-5 Cases*, 81 Cal. L. Rev. 1587, 1642 (1993) ("[I]t bears repeating that statutes of repose for federal causes of action are relatively rare.").

containing any statement which . . . is false or misleading with respect to any material fact."[4] Section 14(a) "do[es] not expressly provide a private right of action," but "[t]he Supreme Court [has] recognized an implied private right of action for injury caused by [its] violation."[5] Because the private right of action in Section 14(a) is implied and not express, it is no surprise that a statute of repose is not to be found in its text. "[W]e are [therefore] faced with the awkward task of discerning the limitations period that Congress intended courts to apply to a cause of action it really never knew existed."[6]

We have taken up this task before, some 25 years ago. In *Ceres Partners v. GEL Associates*, 918 F.2d 349 (2d Cir. 1990), we concluded that the implied private rights of action in Section 14 were "analogous" to the express private rights of action in Sections 9(f) and 18(a) of the 1934 Act, 15 U.S.C. §§ 78i(f),[7] 78r(a),[8] in large part

---

[4] Section 14(a) appears in a section of the 1934 Act titled "Proxies," and states that "[i]t shall be unlawful for any person, . . . in contravention of such rules and regulations as the [SEC] may prescribe . . . , to solicit . . . any proxy or consent or authorization in respect of [certain] securit[ies]." 15 U.S.C. § 78n(a). Rule 14a-9 is one such rule or regulation. *See Wilson v. Great Am. Indus.*, 855 F.2d 987, 991 (2d Cir. 1988).

[5] *Grace v. Rosenstock*, 228 F.3d 40, 47 (2d Cir. 2000) (citing *J.I. Case Co. v. Borak*, 377 U.S. 426 (1964)).

[6] *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 359 (1991).

[7] Section 9(f) appears in a section of the 1934 Act titled "Manipulation of security prices," and states that "[a]ny person who willfully participates in any act or transaction in violation of subsections (a), (b), or (c) of this section, shall be

because these actions share common goals.[9] We then borrowed the three-year statutes of repose applicable to Sections 9(f) and 18(a) at the time, and applied them to Section 14.[10]

---

liable to any person who shall purchase or sell any security at a price which was affected by such act or transaction . . . ." 15 U.S.C. § 78i(f).

[8] Section 18(a) appears in a section of the 1934 Act titled "Liability for misleading statements," and reads as follows:

> Any person who shall make or cause to be made any statement in any application, report, or document filed pursuant to this chapter or any rule or regulation thereunder or any undertaking contained in a registration statement as provided in subsection (d) of section 78o of this title, which statement was at the time and in the light of the circumstances under which it was made false or misleading with respect to any material fact, shall be liable to any person (not knowing that such statement was false or misleading) who, in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement, for damages caused by such reliance, unless the person sued shall prove that he acted in good faith and had no knowledge that such statement was false or misleading . . . .

15 U.S.C. § 78r(a).

[9] *See Ceres*, 918 F.2d at 361–62. When *Ceres* and many of the other cases discussed in this opinion were decided, the private right of action now contained in Section 9(f) was contained in Section 9(e). To avoid confusion, we will refer only to Section 9(f) here.

[10] *Id.* The statute of repose then applicable to Section 9(f) stated that "[n]o action shall be maintained to enforce any liability created under this section, unless brought . . . within three years after [the] violation." 15 U.S.C. § 78i(f). Similarly, the statute of repose then applicable to Section 18(a) stated that "[n]o action shall be maintained to enforce any liability created under this section unless brought . . . within three years after [the] cause of action accrued." *Id.* § 78r(c).

Approximately 12 years after we decided *Ceres*, however, Congress passed the Sarbanes-Oxley Act of 2002 ("SOX"), Pub. L. No. 107-204, 116 Stat. 745. Section 804(b) of SOX, now codified at 28 U.S.C. § 1658(b), extended to five years the statute of repose applicable to certain "private right[s] of action that involve[ ] a claim of fraud, deceit, manipulation, or contrivance." Section 1658(b) thus necessitates a reexamination of our holding in *Ceres*. Because in that case we borrowed the three-year statutes of repose then applicable to Sections 9(f) and 18(a) and applied them to Section 14, we must determine whether Sections 9(f), 18(a), or 14(a) provide "private right[s] of action that involve[ ] a claim of fraud, deceit, manipulation, or contrivance," to which a five-year statute of repose would now apply.

We hold that Sections 9(f) and 18(a) do indeed provide "private right[s] of action that involve[ ] a claim of fraud, deceit, manipulation, or contrivance," to which a five-year statute of repose now applies by virtue of the enactment of SOX, but that Section 14(a) does not provide such a private right of action. Accordingly, borrowing the statute of repose applicable to Sections 9(f) and 18(a) and applying it to Section 14 is no longer appropriate, because doing so would frustrate, rather than "effect[,] Congress' objectives in enacting the securities laws."[11]

We therefore hold that the same three-year statutes of repose we applied to Section 14 in *Ceres*—i.e., the three-year statutes of

---

[11] *Musick, Peeler & Garrett v. Emp'rs Ins. of Wausau*, 508 U.S. 286, 295 (1993).

repose that, until Congress passed SOX, applied to Sections 9(f) and 18(a)—still apply to Section 14(a) today. We further hold that, like all statutes of repose, the statutes of repose applicable to Section 14(a) begin to run on "the date of the [defendant's] last culpable act or omission."[12]

Primarily for these reasons, we **AFFIRM** the March 14, 2014 judgment of the United States District Court for the Southern District of New York (Lorna G. Schofield, *Judge*), dismissing the Section 14(a) claim asserted by plaintiff-appellant DeKalb County Pension Fund ("DeKalb") as time-barred by the applicable three-year statutes of repose, and dismissing DeKalb's claim under Section 20(a) of the 1934 Act, 15 U.S.C. § 78t(a), for failure to state a claim upon which relief can be granted.

## BACKGROUND

On October 2, 2007, GlobalSantaFe Corp. ("GSF"), "an offshore oil and gas drilling contractor," and defendant-appellee Transocean Inc. ("Transocean"), "one of the largest international providers of offshore contract drilling services for oil and gas," jointly disseminated a proxy statement concerning a proposed merger between the companies.[13] The proxy statement included

---

[12] *Waldburger*, 134 S. Ct. at 2182.

[13] Joint Appendix ("J.A.") 564, 566. Following its reorganization as a Swiss company in 2008, "Transocean Inc." changed its name to "Transocean Ltd.," J.A. 570–71, which explains the presence of both names in the caption of this appeal. The company will be referred to as "Transocean" throughout this opinion.

numerous representations regarding Transocean's compliance with various environmental laws, its training and safety programs, and its equipment maintenance, among other subjects.[14] GSF's shareholders, including DeKalb, approved the merger at a November 9, 2007 shareholder meeting.[15] Pursuant to the merger's terms, DeKalb exchanged each of its GSF shares for .4757 Transocean shares and a $22.46 cash payment.[16]

At the time of the merger, Transocean owned various offshore oil-drilling rigs throughout the world—including the now-infamous *Deepwater Horizon*, which exploded on April 20, 2010, "causing . . . the worst oil spill in U.S. history."[17] In the wake of the *Deepwater Horizon* disaster, Transocean's stock lost more than half of its value.[18]

On September 30, 2010, Bricklayers and Masons Local Union No. 5, Ohio Pension Fund ("Bricklayers") filed a class-action complaint against Transocean, as well as defendants-appellees Robert L. Long and Jon A. Marshall, the chief executive officers of Transocean and GSF, respectively, at the time of the merger.[19] Bricklayers alleged that the proxy statement disseminated in

---

[14] J.A. 566.

[15] J.A. 566, 569.

[16] J.A. 564.

[17] J.A. 564, 568.

[18] J.A. 568–69.

[19] J.A. 21, 26.

advance of the merger "contained false and material statements and omissions regarding Transocean's dangerously lax safety protocols for oil drilling and reoccurring issues with [its] blowout preventer . . . technology," in violation of Section 14(a).[20]

DeKalb made its first appearance in the action on December 3, 2010, when it filed a motion to be appointed as lead plaintiff.[21] The District Court subsequently appointed as lead plaintiff "the DeKalb-Bricklayers Group," which DeKalb and Bricklayers had formed together in light of "their respective financial stakes in the litigation and their mutual dedication to the prosecution of the action on behalf of the named class."[22]

On April 7, 2011, the DeKalb-Bricklayers Group filed an amended class-action complaint, in which it asserted violations of Section 14(a), Rule 14a-9, and Section 20(a).[23] "Section 20(a) establishes secondary liability for 'every person who, directly or indirectly, controls any person' directly liable under the" 1934 Act.[24] "To state a claim of control person liability under [Section] 20(a), a

---

[20] J.A. 22.

[21] J.A. 387–88.

[22] J.A. 446–48.

[23] J.A. 450, 455.

[24] *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 371 n.6 (2d Cir. 2014) (alterations omitted) (quoting 15 U.S.C. § 78t(a)).

plaintiff must show," *inter alia*, "a primary violation by the controlled person."[25]

On March 30, 2012, the District Court dismissed Bricklayers from the action for lack of standing, finding that it had "failed to proffer any facts showing that it was eligible to vote" on the merger or "that it retained its Transocean stock after" the *Deepwater Horizon* disaster.[26] This dismissal left DeKalb as the sole lead plaintiff. DeKalb filed a second amended class-action complaint on April 18, 2012, in which it again asserted Section 14(a), Rule 14a-9, and Section 20(a) claims.[27]

On August 30, 2013, defendants-appellees filed a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss DeKalb's Section 14(a) claim on the ground that it was time-barred by the applicable statutes of repose, which motion the District Court granted on March 14, 2014.[28] In granting the motion, the District Court borrowed the three-year statutes of repose that applied to Sections 9(f) and 18(a) before the passage of SOX and applied them to DeKalb's Section 14(a) claim, but did not address whether SOX had extended Section 9(f)'s or Section 18(a)'s statutes

---

[25] *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 236 (2d Cir. 2014) (internal quotation marks omitted).

[26] *See Bricklayers & Masons Local Union No. 5 Ohio Pension Fund v. Transocean Ltd.*, 866 F. Supp. 2d 223, 237 (S.D.N.Y. 2012).

[27] J.A. 559, 564.

[28] *See DeKalb Cty. Pension Fund v. Transocean Ltd.*, 36 F. Supp. 3d 279, 280, 286 (S.D.N.Y. 2014).

11

of repose to five years, apparently assuming that it had not.[29] The District Court did, however, reject DeKalb's argument that § 1658(b) applies directly to Section 14(a).[30] The District Court also held that the applicable three-year statutes of repose began to run on October 2, 2007, the date on which GSF and Transocean jointly disseminated the allegedly false and misleading proxy statement; that the statutes of repose therefore required DeKalb to have filed its Section 14(a) claim before October 2, 2010; and that DeKalb's Section 14(a) claim was consequently time-barred, inasmuch as DeKalb did not even appear in the action until December 3, 2010, approximately two months after the deadline had passed.[31] The District Court also held that, because a Section 20(a) claim "is necessarily predicated on a primary violation of securities law, the dismissal of [DeKalb's Section] 14(a) claim necessarily mean[t] the dismissal of [DeKalb's Section] 20 claim as well."[32] DeKalb timely appealed.[33]

---

[29] *See id.* at 282–84.

[30] *See id.* See the text following note 10 for the relevant language from § 1658(b).

[31] *See id.* at 284–85.

[32] *Id.* at 286 (citation and internal quotation marks omitted).

[33] J.A. 642–43.

## DISCUSSION

"We review *de novo* the grant of a motion to dismiss under Rule 12(b)(6) . . . , accepting as true the factual allegations in the complaint and drawing all inferences in the plaintiff's favor."[34]

## I. The Three-Year Statutes of Repose that Applied to Sections 9(f) and 18(a) Before the Passage of SOX Continue to Apply to Section 14(a)

Before turning to the question of whether § 1658(b) applies to Sections 9(f), 18(a), or 14(a), it will be helpful to briefly describe our decision in *Ceres*, given its importance to our inquiry.

In *Ceres*, the plaintiff alleged violations of Section 10(b), 15 U.S.C. § 78j(b), Section 14(d), 15 U.S.C. § 78n(d), and Section 14(e), 15 U.S.C. § 78n(e), all of the 1934 Act, as well as SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.[35] As in this case, the plaintiff brought those claims pursuant to implied private rights of action.[36] The two questions presented on appeal were whether those claims should be governed by a "uniform federal limitary period," instead of whatever statute of repose applied to the most analogous state statute; and if so, what

---

[34] *Biro v. Conde Nast*, 807 F.3d 541, 544 (2d Cir. 2015); *see also Fed. Hous. Fin. Agency v. UBS Ams. Inc.*, 712 F.3d 136, 140 (2d Cir. 2013) (reviewing de novo the denial of a motion to dismiss an action as time-barred by a statute of repose).

[35] *See* 918 F.2d at 350.

[36] *See id.* at 361–62.

13

that period should be.[37] Answering the first question in the affirmative, we moved to the second.[38]

We began by explaining that the 1934 Act "provides for a number of private actions," including those under Sections 9(f) and 18(a), and that the "goal of these sections, as for [Section] 10(b), is to ensure full disclosure, to prohibit conduct recognized as manipulative and deceptive, and to give the SEC the authority to take steps to counter other conduct having the same effect. Thus, the actions available under the 1934 Act share common goals."[39]  We then observed that the express private rights of action found in Sections 9(f) and 18(a), "for which a . . . three-year statute of [repose was] provided[,] . . . are closely related to the right of action implied under [Section] 10(b) and Rule 10b-5," and that there is also a "permissible overlap between actions under [Section] 10(b) and those under" Section 11 of the Securities Act of 1933 (the "1933 Act), 15 U.S.C. § 77k, to which a three-year statute of repose also

---

[37] *Id.* at 350. In *Ceres*, we used the term "statute of limitations" to refer to both statutes of limitations and statutes of repose. The terms "are often confused," *UBS Ams.*, 712 F.3d at 140 (internal quotation marks omitted), and their "general usage . . . has not always been precise," *Waldburger*, 134 S. Ct. at 2186. Notwithstanding the nomenclature that we employed, it is indisputable that the three-year component of the "one-year/three-year limitations period" that we discussed in *Ceres* is a statute of repose, not a statute of limitations. *See Lampf*, 501 U.S. at 362 (describing the same three-year component as a "period of repose"); *see also In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d 189, 194 & n.6 (3d Cir. 2007) (same); *Blaz v. Belfer*, 368 F.3d 501, 503 (5th Cir. 2004) (same).

[38] *Ceres*, 918 F.2d at 352–61.

[39] *Id.* at 361 (citation omitted).

applied.[40] Finally, because "Sections 14(d) and 14(e) of the 1934 Act . . . are similarly provisions designed to ensure that security holders receive full disclosure," they "substantially overlap" Sections 9 and 18(a) and Rule 10b-5 as well.[41] Accordingly, we concluded that since Congress has provided in Sections 9(f) and 18(a) express rights of action "that so substantially overlap" the rights of action implied under Sections 10(b) and 14, "and has provided a limitations period with respect to those express rights, the specified period provides a far more appropriate analogy than do state statutes devoted to different types of claims."[42]

Thus, to summarize, we analogized the implied private rights of action in Sections 10(b) and 14 of the 1934 Act to the express private rights of action in Sections 9(f) and 18(a) of the 1934 Act and Section 11 of the 1933 Act, on the basis of the common goals that these actions share. We then borrowed the three-year statutes of repose applicable to the express private rights of action and applied them to the implied private rights of action. Notably, however, we did not take a position regarding to which of the express rights of action the implied rights of action were most similar. That is, we did not decide whether Sections 10(b) and 14 were more like Section 9(f), Section 18(a), or Section 11. Of course, there was no need for us to do

---

[40] *Id.*

[41] *Id.* at 361–62.

[42] *Id.* at 362.

so—at the time, Sections 9(f), 18(a), and 11 all had three-year statutes of repose.

It also bears mentioning that the Supreme Court expressed its approval of *Ceres* in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991). In *Lampf*, the Supreme Court took up the question of "which statute of [repose] is applicable to a private suit brought pursuant to" Section 10(b) and Rule 10b-5.[43] Just as we had in *Ceres*, the Court looked to Sections 9(f) and 18(a) for its answer, as those sections "target the precise dangers that are the focus of [Section] 10(b)."[44] According to the Court, all three sections were "intended to facilitate a central goal: to protect investors against manipulation of stock prices through regulation of transactions upon securities exchanges and in over-the-counter markets, and to impose regular reporting requirements on companies whose stock is listed on national securities exchanges."[45] Additionally, the Court noted that, "[i]n adopting the 1934 Act, . . . Congress also amended the limitations provision of the 1933 Act," adopting a three-year statute of repose "for each cause of action contained therein."[46]

Thus, the Court found, "there can be no doubt that the[se] contemporaneously enacted express remedial provisions represent a

---

[43] 501 U.S. at 352.

[44] *Id*. at 360.

[45] *Id*. at 360–61 (internal quotation marks omitted).

[46] *Id*. at 360.

federal statute of [repose] actually designed to accommodate a balance of interests very similar to that at stake" in Section 10(b) and Rule 10b-5.[47] The Court therefore "agree[d] with every Court of Appeals that ha[d] been called upon to apply a federal statute of limitations to a [Section] 10(b) claim that the express causes of action contained in the 1933 and 1934 Acts provide [the] appropriate" statute of repose, and the Court cited *Ceres* in support of that conclusion.[48]

## A. Section 1658(b) Applies to Section 9(f)

We now turn to the question of whether § 1658(b) applies to Section 9(f). Although neither the Supreme Court nor we have previously addressed this issue, several lower courts have suggested that it does.[49] These decisions are sound. While it is true that § 1658(b) did not expressly repeal the limitations period in Section 9(f), "an implied repeal will . . . be found where provisions in two

---

[47] *Id.* at 359 (internal quotation marks omitted).

[48] *Id.* at 362 (citing *Ceres*, 918 F.2d 349).

[49] *See Silberstein v. Aetna, Inc.*, No. 13-CV-8759 (AJN), 2015 WL 1424058, at *7 n.1 (S.D.N.Y. Mar. 26, 2015) ("[Section] 9(f) has . . . been amended to create a . . . five-year period for actions involving fraud or deceit by [SOX]."); *Friedman v. Rayovac Corp.*, 295 F. Supp. 2d 957, 974–75 (W.D. Wis. 2003) ("Although [SOX] did not expressly repeal the limitations period in [Section 9(f)], to the extent that the two statutes conflict, the more recent statute would control."); *see also Small v. Arch Capital Grp., Ltd.*, No. 03-CV-5604 (JFK), 2005 WL 696903, at *7 (S.D.N.Y. Mar. 24, 2005) ("The enactment of [SOX] . . . extended the [statute of] limitations . . . in [Section 9(f)] to two years . . . .").

statutes are in irreconcilable conflict."[50] This standard accurately describes the relationship between § 1658(b) and Section 9(f).

As noted, § 1658(b) applies to "a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance."[51] In view of this language, we agree with the Third and Fourth Circuits that, at a minimum, Congress clearly intended it to apply to "claims requiring proof of fraudulent intent."[52] A claim arising under Section 9(f), "the statutory provision that governs securities price manipulation claims,"[53] is exactly that, as it "contain[s] requirements of both manipulative motive and willfulness."[54] Thus, the statutes of repose contained in § 1658(b) and Section 9(f) both purport to apply to Section 9(f), but prescribe different periods of time. As such, they "are in irreconcilable conflict," and "the later [statute] to the extent

---

[50] *Carcieri v. Salazar*, 555 U.S. 379, 395 (2009) (alteration and internal quotation marks omitted).

[51] 28 U.S.C. § 1658(b).

[52] *In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d at 197; *see also Jones v. Southpeak Interactive Corp. of Del.*, 777 F.3d 658, 667–68 (4th Cir. 2015) (same).

[53] *Merck & Co. v. Reynolds*, 559 U.S. 633, 646 (2010).

[54] *Crane Co. v. Westinghouse Air Brake Co.*, 419 F.2d 787, 794 (2d Cir. 1969); *see also Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 209 n.28 (1976) (holding that Section 9(f) "contains a state-of-mind condition requiring something more than negligence"); *Chemetron Corp. v. Bus. Funds, Inc.*, 682 F.2d 1149, 1161 & n.18 (5th Cir. 1982) (holding that Section 9(f) requires, *inter alia*, "a misstatement or omission . . . of material fact . . . made with scienter" (internal quotation marks omitted)), *vacated and remanded on other grounds*, 460 U.S. 1007 (1983).

of the conflict [therefore] constitutes an implied repeal of the earlier one."[55]

Relying primarily on a single sentence from a Senate Judiciary Committee report, other lower courts have suggested that § 1658(b) "was not intended to conflict with existing limitations periods for any express private rights of action under the federal securities laws" (such as Section 9(f)), but was instead intended to apply only to express private rights of action lacking limitations periods or to implied private rights of action (such as Section 10(b)).[56] As the Supreme Court has "repeatedly held," however, "the authoritative statement is the statutory text, not the legislative history or any other extrinsic material."[57] In fact, the Court has cast a wary eye on the specific type of report on which these district-court decisions were based:

> [J]udicial reliance on legislative materials like committee reports, which are not themselves subject to the requirements of Article I, may give unrepresentative committee members—or, worse yet, unelected staffers and lobbyists—both the power and the incentive to attempt strategic manipulations of legislative history to

---

[55] *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 468 (1982) (internal quotation marks omitted).

[56] *See, e.g., In re Metro. Sec. Litig.*, 532 F. Supp. 2d 1260, 1283–84 (E.D. Wash. 2007) (internal quotation marks omitted) (quoting S. Rep. No. 107-146, at 29 (2002) (Conf. Rep.)); *In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 402, 415 (S.D.N.Y. 2005) (same).

[57] *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005).

secure results they were unable to achieve through the statutory text.[58]

What is more, the particular report in question seems to be especially unreliable. The specific sentence therefrom on which these lower courts relied was preceded by the following introduction:

> We believe current law likely provides an adequate length of time in which people who have been defrauded can file suit . . . . Regrettably, the sponsors of [the original Senate version of the bill] prevailed in their effort to extend the current statute of [repose], and we would like to clarify our understanding of the intended parameters of that extension.[59]

In other words, the sentence that formed the basis for these decisions appears to have been drafted by those senators who lost the battle to prevent § 1658(b)'s passage, and therefore may have been engaging in the type of "strategic manipulations of legislative

---

[58] *Id.*; *see also Nw. Envtl. Def. Ctr. v. Bonneville Power Admin.*, 477 F.3d 668, 684 n.13 (9th Cir. 2007) ("Reports are usually written by staff or lobbyists, not legislators; few if any legislators read the reports; they are not voted on by the committee whose views they supposedly represent, much less by the full Senate or House of Representatives; they cannot be amended or modified on the floor by legislators who may disagree with the views expressed therein." (internal quotation marks omitted)).

[59] S. Rep. No. 107-146, at 28–29 (2002) (Conf. Rep.).

history" against which the Supreme Court has warned, in an effort to curtail the effect of legislation they disfavored.[60]

Further, even if legislative history were driving our determination, there would be plenty of other evidence to counterbalance this language.[61] We need not, however, resort to any such evidence. "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete."[62] Here, as discussed above, § 1658(b) speaks for itself—by its terms, it applies to "private right[s] of action that involve[ ] a claim of fraud, deceit, manipulation, or contrivance," not some subset thereof. [63]

## B. Section 1658(b) Applies to Section 18(a)

We next consider whether § 1658(b) applies to Section 18(a)—another issue that we have not previously addressed, and on which

---

[60] *Exxon Mobil Corp.*, 545 U.S. at 568; *see also Nw. Envtl. Def. Ctr.*, 477 F.3d at 684 n.13 ("Committee reports often contain what some committee members wanted in the bill, but did not get, and are often written . . . after a bill is passed." (internal quotation marks omitted)).

[61] *See, e.g.,* 148 Cong. Rec. S7418-01 (daily ed. July 26, 2002) (statement of Sen. Leahy) (stating that § 1658 is "meant . . . to govern *all* the already existing private causes of action under the various federal securities laws that have been held to support private causes of action" (emphasis supplied)).

[62] *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992) (citations and internal quotation marks omitted).

[63] 28 U.S.C. § 1658(b).

lower courts in our Circuit have also split.[64] This question is more difficult to resolve, because unlike Section 9(f), Section 18(a) does not require a plaintiff to plead or prove scienter (or, indeed, any particular state of mind).[65] But it does not necessarily follow that Section 18(a) is not "a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance."[66]

Section 1658(b) does not define "fraud." As a result, we look to its common-law meaning, because "[i]t is a settled principle of interpretation that, absent other indication, Congress intends to

---

[64] *Compare In re Pfizer Inc. Sec. Litig.*, 584 F. Supp. 2d 621, 641–42 (S.D.N.Y. 2008) (holding that § 1658(b) does not apply to Section 18(a)), *with In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03-MD-1529 (LMM), 2005 WL 1679540, at *4 (S.D.N.Y. July 18, 2005) (holding that it does).

[65] *See Ross v. A.H. Robins Co.*, 607 F.2d 545, 555–56 (2d Cir. 1979) ("To establish a [Section] 10(b) violation, the plaintiff must plead and prove that the defendant acted with scienter in making a material misstatement or omission. A plaintiff seeking recovery under [Section] 18 faces a significantly lighter burden. He must merely plead and prove that a document filed with the [SEC] contains a material misstatement or omission. If he can show reliance on that statement, liability is established . . . ." (emphasis removed)); *see also Deephaven Private Placement Trading, Ltd. v. Grant Thornton & Co.*, 454 F.3d 1168, 1172 (10th Cir. 2006) ("[T]he district court erred in holding that a claim under Section 18(a) requires [a plaintiff] to plead scienter."); *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 283 (3d Cir. 2006) ("A Section 18 plaintiff . . . bears no burden of proving that the defendant acted with scienter or any particular state of mind."); *In re Stone & Webster, Inc., Sec. Litig.*, 414 F.3d 187, 193 (1st Cir. 2005) ("Under [Section 18(a)], . . . a plaintiff bears no burden of proving that the defendant acted with any particular state of mind.").

[66] 28 U.S.C. § 1658(b).

incorporate the well-settled meaning of the common-law terms it uses."[67]

The eighth edition of *Black's Law Dictionary*—which is the edition published closest in time to the passage of SOX[68]—defines "fraud" in pertinent part as follows: "1. A knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment. . . . 2. A misrepresentation made recklessly without belief in its truth to induce another person to act."[69] The question, then, is whether Section 18(a) "involves a claim of a knowing misrepresentation of the truth or concealment of a material fact to induce another to act to his or her detriment," or "involves a claim of a misrepresentation made recklessly without belief in its truth to induce another person to act." We conclude that it does.

---

[67] *United States v. Castleman*, 134 S. Ct. 1405, 1410 (2014) (internal quotation marks omitted); *see also United States v. Coplan*, 703 F.3d 46, 59–60 (2d Cir. 2012) (interpreting "fraud" and "defraud" according to their established common-law meanings); *cf.* Antonin Scalia & Brian A. Garner, *Reading Law: The Interpretation of Legal Texts* 320 & n.6 (2012) (noting that this "age-old principle . . . has been applied to such terms as . . . *fraud*").

[68] *See Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 876 (2014) (interpreting a statutory term "as taking [its] . . . common meaning" from "the era of [the statute's] enactment" (internal quotation marks omitted)).

[69] *Fraud*, *Black's Law Dictionary* (8th ed. 2004); *cf. McCullen v. Coakley*, 134 S. Ct. 2518, 2547 (2014) (Scalia, J., concurring in the judgment) (referring to *Black's Law Dictionary* to determine the common-law meaning of a statutory term); *Schiller v. Tower Semiconductor Ltd.*, 449 F.3d 286, 300 (2d Cir. 2006) (referring to *Black's Law Dictionary* to determine the "well-accepted meanings" of terms used in the securities laws).

On its face, Section 18(a) unquestionably "involves a claim of a misrepresentation made . . . to induce another person to act."[70] And the Supreme Court has strongly indicated that, in order for a plaintiff to recover under Section 18(a), such a misrepresentation also must have been made knowingly or recklessly, at the very least.

In *Ernst & Ernst v. Hochfelder*, 425 U.S. 185 (1976), the Court stated that Section 18(a) "contains a state-of-mind condition requiring something more than negligence," and that its "legislative history . . . suggests something more than negligence on the part of the defendant is required for recovery."[71] Relying on this language, we noted in *Ross v. A.H. Robins Co.*, 607 F.2d 545 (2d Cir. 1979), that "a party may not be held liable under [Section] 10(b) unless he acted with scienter. It may well be that a similar requirement attaches to [Section] 18 liability."[72] The Supreme Court used even stronger language in *Musick, Peeler & Garrett v. Employers Insurance of Wausau*, 508 U.S. 286 (1993), in which it stated that Section 18(a) "involve[s] defendants who have violated the securities law with scienter";

---

[70] *See* 15 U.S.C. § 78r(a) ("Any person who shall make or cause to be made any statement . . . , which statement was at the time and in the light of the circumstances under which it was made *false or misleading with respect to any material fact*, shall be liable to any person . . . who, *in reliance upon such statement*, shall have purchased or sold a security at a price which was affected by such statement . . . ." (emphasis supplied)); *see also Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 178 (1994) (discussing Section 18(a)'s "reliance requirement" (internal quotation marks omitted)).

[71] 425 U.S. at 209 n.28, 211 n.31.

[72] 607 F.2d at 555.

24

contrasted Section 18(a) with Sections 11 and 12 of the 1933 Act, 15 U.S.C. §§ 77k, 77l, and Section 16 of the 1934 Act, 15 U.S.C. § 78p, which "do not require scienter in all instances"; and described Section 18(a) as prohibiting an "intentional tort[ ]."[73]

In light of the Court's statement that Section 18(a) requires "scienter," it is useful to define that term. For purposes of the securities laws, the Supreme Court has defined it as "a mental state embracing intent to deceive, manipulate, or defraud."[74] This definition corresponds almost exactly to § 1658(b)'s references to "deceit," "manipulation," and "fraud."[75] Moreover, the Supreme Court has explained that "the intent motivating [Section 18(a)] is . . . to deter *fraud and manipulative practices* in the securities markets,"[76] and we have explained that one of Section 18(a)'s goals is to "prohibit conduct recognized as *manipulative and deceptive*"[77]—

---

[73] 508 U.S. at 296–97. As the Supreme Court has explained, "[i]ntentional torts . . . , as distinguished from negligent or reckless torts, generally require that the actor intend the consequences of an act, not simply the act itself." *Straub v. Proctor Hosp.*, 562 U.S. 411, 417 (2011) (alterations, emphasis, and internal quotation marks omitted).

[74] *Hochfelder*, 425 U.S. at 193 & n.12; *accord United States v. Newman*, 773 F.3d 438, 447 (2d Cir. 2014) (same); *Scienter, Black's Law Dictionary* (10th ed. 2014) (defining "scienter" in part as "[a] mental state consisting in an intent to deceive, manipulate, or defraud," and noting that "[i]n this sense, the term is used most often in the context of securities fraud").

[75] *See* 28 U.S.C. § 1658(b).

[76] *Musick*, 508 U.S. at 296 (emphasis supplied) (internal quotation marks omitted).

[77] *Ceres*, 918 F.2d at 361 (emphasis supplied).

language that, like the definition of "scienter," matches § 1658(b)'s references to "fraud," "manipulation" and "deceit."[78]

We also think it significant that Section 18(a) imposes liability "unless the person sued shall prove that he acted in good faith and had no knowledge that such statement was false or misleading."[79] The presence of this good-faith defense means that, as a practical matter, Section 18(a) actions will generally involve proof of a defendant's state of mind, and recovery will be permitted only where a defendant acted, at a minimum, recklessly. Congress's inclusion of this defense thus further demonstrates that it intended Section 18(a) to reach only fraudulent misrepresentations, rather than negligent or innocent ones.[80]

---

[78] 28 U.S.C. § 1658(b); *see also Lampf*, 501 U.S. at 360–61 (stating that Section 18(a) "was intended to facilitate a central goal: to protect investors against *manipulation* of stock prices" (emphasis supplied) (internal quotation marks omitted)).

[79] 15 U.S.C. § 78r(a).

[80] We also note that a good-faith defense such as that contained in Section 18(a) makes perfect sense in the context of a private right of action that involves a misrepresentation "made recklessly without belief in its truth," but would make far less sense in the context of a private right of action that involved a misrepresentation made merely negligently, or that imposed strict liability. *Cf. Nelson v. First Nat'l Bank & Trust Co. of Williston*, 543 F.3d 432, 436 (8th Cir. 2008) (suggesting "that a negligent act can[ ] be made in good faith"); *United States v. Dowlin*, 408 F.3d 647, 667 (10th Cir. 2005) (affirming jury instructions that "[a]n honest belief or good faith belief by the defendants that the statements or representations made were true is a complete and total defense to the charge of securities fraud" (internal quotation marks omitted)); *Mortenson v. Nat'l Union*

26

Lastly, we have explicitly stated that Section 18(a) "create[s] [a] private right[ ] of action for various types of *fraud*,"[81] and we have described a violation of Section 18(a) as "fraud" on at least one other occasion.[82]

Taken together, these factors lead us to join the Fifth Circuit in concluding that, like Section 9(f), Section 18(a) is governed by § 1658(b).[83] A plaintiff asserting a Section 18(a) claim is, in essence, asserting a fraud claim—a fraud claim with respect to which the defendant, and not the plaintiff, uncharacteristically bears the burden of proof regarding the defendant's state of mind, but a fraud claim no less.[84]

---

*Fire Ins. Co. of Pittsburgh*, 249 F.3d 667, 670 (7th Cir. 2001) (stating that, as concerns "strict liability crimes, . . . [a] defendant's state of mind is irrelevant").

[81] *Ceres*, 918 F.2d at 361 (emphasis supplied).

[82] *See Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1037 (2d Cir. 1992) (discussing a Section 18(a) claim for "fraud in connection with a registration statement").

[83] *See Blaz*, 368 F.3d at 503 ("Pursuant to . . . § 1658(b) . . . , th[e] statute of repose [in Section 18(c) of the 1934 Act] . . . has been extended to five years . . . .").

[84] *Cf. Ross*, 607 F.2d at 556 (suggesting that "the defendant's state of mind" is relevant to a Section 18(a) claim, and that "the ultimate outcome of the litigation may hinge upon who bears the burden of establishing" it); *Deephaven Private Placement Trading, Ltd.*, 454 F.3d at 1172 (suggesting that "[t]he state of mind with which the defendant acted" is relevant to a Section 18(a) claim, but that it "enters the case as a defense"); *Magna Inv. Corp. v. John Does One Through Two Hundred*, 931 F.2d 38, 40 (11th Cir. 1991) (suggesting that a defendant's "bad faith" is relevant to a Section 18(a) claim, but that the plaintiff does not bear the burden of proving it).

Lest our holding that Section 18(a) is governed by § 1658 engender confusion in other contexts, we reiterate that Section 18(a) does not require a plaintiff to plead or prove "any particular state of mind,"[85] and that "it is the defendant's burden to prove, in the context of [S]ection 18[(a)], that it acted in good faith."[86]

## C. Section 1658(b) Does Not Apply to Section 14(a)

The import of the foregoing analysis is that the landscape has fundamentally changed since we decided *Ceres*. To recapitulate, in *Ceres*, our primary points of reference for determining which statute of repose applies to Section 14 were the statutes of repose that applied to Sections 9(f) and 18(a) before the passage of SOX. But § 1658(b) has since extended those statutes of repose to five years.[87]

Thus, if we were to take the same analytical approach that we took in *Ceres* to the question before us today—i.e., borrow the statutes of repose applicable to Sections 9(f) and 18(a)—the statute of repose applicable to Section 14(a) would be five years. But this would be an absurd result, undeniably contrary to clearly expressed congressional intent, and would frustrate, rather than "effect[,]

---

[85] *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d at 283; *see also In re Stone & Webster, Inc., Sec. Litig.*, 414 F.3d at 193 (same).

[86] *Magna Inv. Corp.*, 931 F.2d at 40.

[87] It should be noted that the Supreme Court has held that § 1658(b) also extended to five years the statute of repose applicable to Section 10(b). *See Merck*, 559 U.S. at 638 (applying § 1658(b) to Section 10(b)); *see also Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 411 (2d Cir. 2008) (same).

Congress' objectives in enacting the securities laws."[88] We would, essentially, be applying § 1658(b) to Section 14(a), albeit indirectly. And yet, Congress has specified that § 1658(b) applies only to "private right[s] of action that involve[ ] a claim of fraud, deceit, manipulation, or contrivance,"[89] which Section 14(a) does not.[90]

Confronted, then, with one of the "inevitable . . . difficult problems regarding the interplay of the [1934 Act's] express and implied remedies" that we predicted "such a complex scheme of regulation" would "spawn,"[91] we resort to a simpler methodology.

---

[88] *Musick*, 508 U.S. at 295.

[89] 28 U.S.C. § 1658.

[90] *See Wilson*, 855 F.2d at 995 ("Under Rule 14a-9, plaintiffs need not demonstrate that the omissions and misrepresentations resulted from knowing conduct undertaken by the director defendants with an intent to deceive. Liability can be imposed for negligently drafting a proxy statement." (citation omitted)); *see also Beck v. Dobrowski*, 559 F.3d 680, 682 (7th Cir. 2009) ("There is no required state of mind for a violation of section 14(a); a proxy solicitation that contains a misleading misrepresentation or omission violates the section even if the issuer believed in perfect good faith that there was nothing misleading in the proxy materials."); *In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d at 196 ("Violations of § 14(a) . . . may be committed without scienter; in other words, no culpable intent is required."). *But see SEC v. Das*, 723 F.3d 943, 953 (8th Cir. 2013) (noting that the Eighth Circuit has "concluded that scienter is an element, at least for Rule 14a-9 claims against outside directors and accountants" (alterations and internal quotation marks omitted)); *Ind. State Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 719 F.3d 498, 507 n.3 (6th Cir. 2013) ("In this Circuit § 14(a) does in fact require proof of scienter to state a claim."), *vacated and remanded on other grounds sub nom. Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318 (2015).

[91] *Ross*, 607 F.2d at 551.

"We assume that Congress is aware of existing law when it passes legislation."[92] Thus, we presume that, when Congress passed SOX, it was "aware of [two features of] the judicial background against which it [was] legislat[ing]"[93]: (1) *Ceres* and many similar decisions borrowing the three-year statutes of repose then applicable to Sections 9(f) and 18(a) and applying them to Section 14(a);[94] and (2) myriad decisions holding that "[l]iability can be imposed [under Section 14(a)] for negligently drafting a proxy statement."[95] Put

---

[92] *Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990); *see also Cannon v. Univ. of Chi.*, 441 U.S. 677, 696–97 (1979) ("It is always appropriate to assume that our elected representatives, like other citizens, know the law . . . .").

[93] *Siebert v. Conservative Party of N.Y. State*, 724 F.2d 334, 337 (2d Cir. 1983).

[94] *See Ceres*, 918 F.2d at 364; *Westinghouse Elec. Corp. by Levit v. Franklin*, 993 F.2d 349, 353 (3d Cir. 1993) ("[W]e find that Section 14(a) claims . . . are similar and related to explicit causes of action enumerated in the [1934 Act] for which Congress did expressly provide a limitations period of . . . in no event more than three years after such violation." (internal quotation marks omitted)); *Gilliam v. Hobert*, 952 F. Supp. 319, 322 (W.D. Va. 1997) (implicitly holding that a three-year statute of repose applies to Section 14(a)); *Hamilton v. Cunningham*, 880 F. Supp. 1407, 1411 (D. Colo. 1995) ("[T]he . . . three-year limitations period governs . . . § 14(a) claims . . . .").

[95] *Wilson*, 855 F.2d at 995; *see also Herskowitz v. Nutri/Sys., Inc.*, 857 F.2d 179, 190 (3d Cir. 1988) ("A material misrepresentation even when made negligently rather than intentionally or recklessly, can still inflict the anticipated harm, and is thus deemed actionable."); *Shidler v. All Am. Life & Fin. Corp.*, 775 F.2d 917, 927 (8th Cir. 1985) (affirming the district court's dismissal of the plaintiffs' Section 14(a) claim "[b]ecause the defendants were not negligent"); *SEC v. Arthur Young & Co.*, 590 F.2d 785, 787 (9th Cir. 1979) ("assum[ing], without deciding, that in a statutory enforcement proceeding [brought by the SEC], negligence, rather than scienter, constitutes the standard by which an accountant's or auditor's performance must be measured" under Section 14(a)); *Gruss v. Curtis Publ'g Co.*, 534 F.2d 1396, 1403 (2d Cir. 1976) (describing

differently, Congress must have known that, by extending only the statute of repose applicable to "private right[s] of action that involve[ ] a claim of fraud, deceit, manipulation, or contrivance,"[96] the statutes of repose applicable to Section 14(a) would remain intact. And from this knowledge, we conclude that Congress "affirmatively intended to preserve" them.[97] We therefore hold that

"negligence" as "the standard of culpability we have held applicable as a minimum in damage suits for violations of" Section 14(a)); *Gould v. Am.-Hawaiian S.S.*, 535 F.2d 761, 777 (3d Cir. 1976) ("[T]he district court held negligence to be the appropriate standard under section 14(a) and we agree."); *Republic Tech. Fund, Inc. v. Lionel Corp.*, 483 F.2d 540, 551 n.11 (2d Cir. 1973) (holding that "*negligence* alone suffices to establish culpability" under Section 14(a) (emphasis in original)); *Gerstle v. Gamble-Skogmo, Inc.*, 478 F.2d 1281, 1300–01 (2d Cir. 1973) ("[W]here the plaintiffs represent the very class who were asked to approve a merger on the basis of a misleading proxy statement and are seeking compensation from the beneficiary who is responsible for the preparation of the statement, they are not required to establish any evil motive or even reckless disregard of the facts."); *Dasho v. Susquehanna Corp.*, 461 F.2d 11, 29 & n.45 (7th Cir. 1972) (holding that, under Section 14(a), "[t]he 'scienter' required in common law fraud is not necessary"); *cf. Hochfelder*, 425 U.S. at 209 n.28 ("[S]ome courts have concluded that proof of scienter is unnecessary in an action [under Section 14(a)] for damages by the shareholder recipients of a materially misleading proxy statement against the issuer corporation."). *But see Adams v. Standard Knitting Mills, Inc.*, 623 F.2d 422, 428 (6th Cir. 1980) ("conclud[ing] that scienter should be an element of liability in private suits under [Section 14(a)] as they apply to outside accountants").

[96] 28 U.S.C. § 1658(b).

[97] *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 381–82 (1982) ("[T]he fact that a comprehensive reexamination and significant amendment of the [statute] left intact the statutory provisions under which the federal courts had implied a cause of action is itself evidence that Congress affirmatively intended to preserve that remedy."); *see also Fiero v. Fin. Indus. Regulatory Auth., Inc.*, 660 F.3d 569, 577 (2d Cir. 2011) (finding significant that the

31

the same three-year statutes of repose that we applied to Section 14 in *Ceres*—which are the three-year statutes of repose that, until Congress passed SOX, applied to Sections 9(f) and 18(a)—still apply to Section 14(a) today.

## II. The Three Year Statutes of Repose Applicable to Section 14(a) Begin to Run on the Date of the Defendant's Last Culpable Act or Omission

Having concluded that Section 14(a)'s three-year repose period is not affected by § 1658(b), we must now determine when that period begins to run.

The three-year statute of repose previously applicable to Section 9(f) stated that "[n]o action shall be maintained to enforce any liability created under this section, unless brought . . . within three years *after such violation*,"[98] while the three-year statute of repose previously applicable to Section 18(a) stated that "[n]o action shall be maintained to enforce any liability created under this section unless brought . . . within three years *after such cause of action accrued*."[99] In the case before us, DeKalb argues that, because of this difference in language, we must choose between the two standards,

---

Financial Industry Regulatory Authority's ("FINRA") "reliance upon [alternative] enforcement methods was known to Congress, [but] Congress left that reliance unaltered" in subsequent legislation, in holding that FINRA was "not authorized to enforce the collection of its fines through the courts").

[98] 15 U.S.C. § 78i(f) (emphasis supplied).

[99] *Id*. § 78r(c) (emphasis supplied).

and urges us to pick Section 18(a)'s "accrual" standard rather than Section 9(f)'s "violation" standard.[100] According to DeKalb, its Section 14(a) claim is timely under the "accrual" standard, because it "accrued on April 20, 2010, the date the *Deepwater Horizon* disaster revealed that . . . Transocean had systematically violated numerous health, safety and environmental laws on the *Deepwater Horizon* drilling rig and on a company-wide basis."[101]

DeKalb cites *Lampf*, arguing that it requires us to determine which section is most analogous to Section 14(a) and then to apply that section's repose language to Section 14(a). We are not persuaded. In *Lampf*, the Supreme Court recognized that the 1934 Act's statutes of *repose*, including those in Sections 9(f) and 18(a), all "relate to . . . three years *after violation*," regardless of any differences in statutory language.[102] Thus, we conclude that, when applying a statute of repose, we do not need to choose between these two standards, because *Lampf* dictates the same result.

In urging otherwise, DeKalb invokes "the discovery rule," pursuant to which, "where a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on [its] part, the bar of the statute does not begin to run until

---

[100] *See* Pl.'s Br. 34.

[101] *Id.* at 36. *See Gabelli v. SEC*, 133 S. Ct. 1216, 1220 (2013) (holding, in the context of a statute of *limitations*, that the "standard rule" is that "a claim accrues when the plaintiff has a complete and present cause of action" (internal quotation marks omitted)).

[102] 501 U.S. at 355 n.2 (emphasis supplied); *see also id.* at 360 & n.6.

the fraud is discovered," or until "it could have been discovered" "in the exercise of reasonable diligence."[103] This argument fails not only because, as explained in Part I of this opinion, Section 14(a) claims do not demand fraud, but also because the discovery rule does not extend to statutes of repose. As courts have observed, statutes of repose "are surgical strikes by the legislature against the discovery rule"[104] that consequently "override[ ]" it.[105] And the Supreme Court has unambiguously characterized the three-year limitations period previously applicable to Section 18(a) as a statute of "repose," not a statute of limitations.[106]

We are bound by this characterization—with which, it should be noted, DeKalb agrees.[107] In any event, holding that the statutes of repose applicable to Section 14(a) begin to run only when the alleged claim was or could have been discovered—an inherently fluid

---

[103] *Gabelli*, 133 S. Ct. at 1221 (internal quotation marks omitted).

[104] *Hinkle by Hinkle v. Henderson*, 85 F.3d 298, 302 (7th Cir. 1996) (citation omitted).

[105] *Chang v. Baxter Healthcare Corp.*, 599 F.3d 728, 733 (7th Cir. 2010); *see also Wike v. Vertrue, Inc.*, 566 F.3d 590, 595 (6th Cir. 2009) ("[A] statute of repose [is] not subject to a discovery rule . . . ."); *Archer v. Nissan Motor Acceptance Corp.*, 550 F.3d 506, 508 (5th Cir. 2008) (suggesting that the discovery rule does not apply to statutes of repose); *cf. Waldburger*, 134 S. Ct. at 2180, 2187–89 (holding that a federal statute's discovery rule preempted state statutes of limitations but not state statutes of repose).

[106] *See Lampf*, 501 U.S. at 360 & n.6; *see also In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d at 194; *Blaz*, 368 F.3d at 503.

[107] *See, e.g.*, Pl.'s Br. at ii, 34 ("DeKalb's Section 14(a) Claim Is Timely Under Section 18(a) [sic] Statute of Repose").

calculus—would defeat their "distinct purpose," which is to "effect a legislative judgment that a defendant should be free from liability after the legislatively determined period of time."[108] Indeed, an "injury need not [even] have *occurred*, much less have been discovered," for a statute of repose to begin to run.[109] Instead, the statutory period is "measured . . . from the date of the [defendant's] last culpable act or omission."[110]

Accordingly, we hold that the three-year statutes of repose applicable to Section 14(a) begin to run on the date of the violation,[111] which we consider to be the date of the defendant's last culpable act or omission.[112] Because Section 14(a) and Rule 14a-9 jointly prohibit "solicitation . . . made by means of any proxy statement . . . containing any statement which . . . is false or misleading with respect to any material fact,"[113] the relevant date in this case was October 2, 2007, when GSF and Transocean jointly

---

[108] *Waldburger,* 134 S. Ct. at 2183 (internal quotation marks omitted).

[109] *Id.* at 2182 (emphasis supplied) (internal quotation marks omitted).

[110] *Id*.

[111] *See Westinghouse*, 993 F.2d at 353 (concluding that, "like Section 10(b) claims," Section 14(a) claims "are similar and related to explicit causes of action . . . for which Congress did expressly provide a limitations period of . . . in no event more than three years after such violation" (internal quotation marks omitted)).

[112] *See Waldburger*, 134 S. Ct. at 2182 (explaining that statutes of repose "are measured not from the date on which the claim accrues but instead from the date of the last culpable act or omission of the defendant").

[113] 17 C.F.R. § 240.14a-9(a); *see also ante* note 4.

disseminated the allegedly false and misleading proxy statement.[114] DeKalb therefore had until October 2, 2010 to file its Section 14(a) claim, but it did not appear in the action until December 3, 2010.[115] As a result, DeKalb's claim is time barred.

## III. DeKalb's Lead-Plaintiff Motion Does Not "Relate Back" Under Rule 17(a)(3) of the Federal Rules of Civil Procedure to Bricklayers' Filing of the Original Class Action Complaint

DeKalb also argues that, even if it did not appear in the action until after the applicable statutes of repose had run, "the District Court's opinion would still need to be reversed [or] remanded because [Bricklayers'] original class action complaint was timely filed" on September 30, 2010, and DeKalb's "lead plaintiff motion [of December 3, 2010] relates back to the initial filing."[116] In making this argument, DeKalb relies on Rule 17(a)(3) of the Federal Rules of Civil Procedure, which provides the following:

> The court may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action. After ratification, joinder, or

---

[114] J.A. 564, 566. *Cf. Lampf*, 501 U.S. at 364 (concluding that plaintiffs' Section 10(b) claims were untimely because they were brought "more than three years after petitioner's alleged misrepresentations").

[115] J.A. 387–88.

[116] Pl.'s Br. 39–40.

substitution, the action proceeds as if it had been originally commenced by the real party in interest.

According to DeKalb, "the consolidated complaint naming DeKalb as a lead plaintiff should be deemed timely filed on September 30, 2010 because DeKalb was substituted in as the 'real party in interest.'"[117]

Rule 17(a)(3), however, has no bearing here. That rule "was added . . . to avoid forfeiture and injustice when an *understandable mistake* has been made in selecting the party in whose name the action should be brought" and "codifie[d] the modern judicial tendency to be lenient when an *honest mistake* has been made in selecting the proper plaintiff."[118] DeKalb has not even suggested that whatever "mistake" may have led to its tardy appearance was "understandable" or "honest," nor pointed to a "semblance of any reasonable basis" therefor.[119] Rather, "through minimal diligence, [DeKalb] could have avoided the operation of the . . . statute of repose simply by making [a] timely motion[ ] to intervene in the

---

[117] Pl.'s Br. 40.

[118] *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.à.r.l.*, 790 F.3d 411, 421 (2d Cir. 2015) (emphasis supplied) (internal quotation marks omitted).

[119] *Advanced Magnetics, Inc. v. Bayfront Partners, Inc.*, 106 F.3d 11, 20 (2d Cir. 1997).

action as [a] named plaintiff[ ], or by filing [its] own timely action[ ]."[120]

In any event, DeKalb's lead-plaintiff motion cannot relate back to Bricklayers' complaint, because that complaint "was a nullity."[121] Bricklayers was not dismissed because it lacked standing to assert *DeKalb's* claims—it was dismissed because it lacked standing to assert *its own* claims. In other words, this is simply not a "situation[ ] in which it [was] unclear at the time the action [was] filed who had the right to sue and it [was] subsequently determined that the right belonged to a party other than the party that instituted the action."[122] Accordingly, we will not "distort[ ]" Rule 17(a)(3) to allow DeKalb "to circumvent the limitations period."[123]

---

[120] *Police & Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 112 (2d Cir. 2013).

[121] *See Cortlandt St.*, 790 F.3d at 423 ("[I]n the absence of a plaintiff with standing, this lawsuit was a nullity, and there was therefore no lawsuit pending for the real party in interest to 'ratify, join, or be substituted into' under Rule 17(a)(3) or otherwise.").

[122] *Del Re v. Prudential Lines, Inc.*, 669 F.2d 93, 96 (2d Cir. 1982).

[123] *See Gardner v. State Farm Fire & Cas. Co.*, 544 F.3d 553, 563 (3d Cir. 2008) (internal quotation marks omitted); *cf.* 6A Charles Alan Wright et al., *Federal Practice and Procedure* § 1555 (3d ed. 2010) ("[I]t has been held that when the determination of the right party to bring the action was not difficult and when no excusable mistake had been made, then Rule 17(a)(3) is not applicable and the action should be dismissed.").

## IV. The Private Securities Litigation Reform Act of 1995 Does Not Toll the Statutes of Repose Applicable to Section 14(a)

DeKalb further claims that "the 60-day period provided by the [Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. No. 104-67, 109 Stat. 737,] for members of the prospective class to move for appointment should legally toll the statute of repose."[124] DeKalb devotes a single paragraph to this argument. And no wonder—it is a difficult one to fathom. The section of the PSLRA to which DeKalb appears to be referring reads as follows, in pertinent part:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff . . . shall cause to be published . . . a notice advising members of the purported plaintiff class . . . that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.[125]

Nothing about this language even remotely suggests that the PSLRA was intended to toll the applicable statutes of repose for the 60 days during which a member of the purported class may file a lead-plaintiff motion, and we have been unable to locate any authority that even arguably supports this notion. Perhaps tellingly,

---

[124] Pl.'s Br. 41.

[125] 15 U.S.C. § 78u-4(a)(3)(A)(i).

DeKalb cites none. We therefore reject DeKalb's argument out of hand.[126]

## V. The *American Pipe* Tolling Rule Does Not Extend to the Statutes of Repose Applicable to Section 14(a)

Lastly, DeKalb asserts that so-called "*American Pipe* tolling"—that is, the tolling rule that the Supreme Court described in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974)—applies here, and renders its Section 14(a) claim timely. In so arguing, DeKalb ignores our decision in *Police & Fire Retirement System of City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95 (2d Cir. 2013).

In *American Pipe*, the Supreme Court held that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class

---

[126] *See* Fed. R. App. P. 28(a)(8) (stating that an appellant's brief "must contain . . . citations to the authorities . . . on which the appellant relies"); *cf. Bldg. Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 190 n.3 (2d Cir. 2012) (summarily "reject[ing] [an] argument . . . [that was] raised only in a single paragraph of the brief and without citation to authority"); James D. Cox et al., *Does the Plaintiff Matter? An Empirical Analysis of Lead Plaintiffs in Securities Class Actions*, 106 Colum. L. Rev. 1587, 1587 (2006) ("The lead plaintiff provision was adopted to encourage a class member with a large financial stake to become the class representative. Congress expected that such a plaintiff would actively monitor the conduct of a securities fraud class action so as to reduce the litigation agency costs that may arise when class counsel's interests diverge from those of the shareholder class.").

action."[127] And in *IndyMac*, "our conclusion [was] straightforward: *American Pipe*'s tolling rule, whether grounded in equitable authority or on Rule 23 [of the Federal Rules of Procedure], does not extend to the statute of repose in Section 13" of the 1933 Act, 15 U.S.C. § 77m.[128]

We reasoned that, if the rule is equitable in nature, its extension to Section 13's statute of repose is barred by *Lampf*, in which the Supreme Court stated that equitable "'tolling principles do not apply to that period.'"[129] But critically, when the Court referred to "that period" in *Lampf*, it was referring to not only Section 13's three-year statute of repose, but also the three-year statutes of repose then applicable to Sections 9(f) and 18(a)—the very same statutes of repose that we found applicable to Section 14(a) in the first part of this opinion.[130] As such, this aspect of our holding in *IndyMac*—that if the *American Pipe* tolling rule is equitable in nature, *Lampf* precludes its extension to Section 13's statute of repose— applies equally to the statutes of repose applicable to Section 14(a).

In *IndyMac*, we also reasoned that, if the *American Pipe* tolling rule is legal in nature, its extension to Section 13's statute of repose is barred by the Rules Enabling Act.[131] Underlying this determination

---

[127] 414 U.S. at 554.

[128] 721 F.3d at 109.

[129] *Id.* (quoting *Lampf*, 501 U.S. at 363).

[130] *See Lampf*, 501 U.S. at 360–63.

[131] *IndyMac*, 721 F.3d at 109 (citing 28 U.S.C. § 2072(b)).

was our observation that, because "the statute of repose in Section 13 creates a *substantive* right," and because "the Rules Enabling Act forbids interpreting Rule 23 to abridge, enlarge, or modify any substantive right," "[p]ermitting a plaintiff to file a complaint or intervene after the repose period set forth in Section 13 . . . has run would therefore necessarily enlarge or modify a substantive right and violate the Rules Enabling Act."[132] But we also stated that *all* statutes of repose create a substantive right.[133] Thus, this aspect of our holding in *IndyMac*—that if the *American Pipe* tolling rule is legal in nature, the Rules Enabling Act precludes its extension to Section 13's statute of repose—applies equally to the statutes of repose applicable to Section 14(a) as well.

Therefore, regardless of whether *American Pipe*'s tolling rule is equitable or legal in nature, it does not extend to the statutes of repose applicable to Section 14(a).

## CONCLUSION

We have considered all of DeKalb's other arguments and find them to be without merit. Accordingly, for the foregoing reasons, we hold as follows:

---

[132] *Id.* (internal quotation marks omitted) (emphasis in original).

[133] *See id.* at 106 ("[S]tatutes of repose create a *substantive* right in those protected to be free from liability after a legislatively-determined period of time." (emphasis in original) (alterations and internal quotation marks omitted).

(1) Sections 9(f) and 18(a) provide "private right[s] of action that involve[ ] a claim of fraud, deceit, manipulation, or contrivance," to which a five-year statute of repose now applies under § 1658(b), but Section 14(a) does not provide such a private right of action.

(2) The same three-year statutes of repose that applied to Sections 9(f) and 18(a) before the passage of SOX, which we borrowed and applied to Section 14 in *Ceres*, still apply to Section 14(a) today.

(3) The statutes of repose applicable to Section 14(a) begin to run on the date of the defendant's last culpable act or omission.

(4) DeKalb's lead-plaintiff motion does not "relate back" under Rule 17(a)(3) to Bricklayers' filing of the original class-action complaint.

(5) The PSLRA does not toll the statutes of repose applicable to Section 14(a).

(6) The *American Pipe* tolling rule does not extend to the statutes of repose applicable to Section 14(a).

Accordingly, we **AFFIRM** the District Court's March 14, 2014 judgment dismissing DeKalb's Section 14(a) claim as time-barred by the applicable three-year statutes of repose and its Section 20 claim for failure to state a claim upon which relief can be granted.

43